Harry Davis (*pro hac vice pending*)
harry.davis@srz.com
Robert E. Griffin (*pro hac vice pending*)
robert.griffin@srz.com
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, New York 10022
Telephone: +1 (212) 756-2000

Thomas P. DeFranco (*pro hac vice pending*)
thomas.defranco@srz.com
SCHULTE ROTH & ZABEL LLP
901 15th Street N.W., Suite 800
Washington, D.C. 20005
Telephone: +1 (202) 729-7470

Edward P Sangster (Bar No. 121041)
edward.sangster@klgates.com
K&L GATES LLP
Four Embarcadero Center, Suite 1200
San Francisco, CA 94111
Telephone: +1 (415) 249-1028
Facsimile: +1 (415) 882-8220

Attorneys for Plaintiff Wilmington Trust N.A.,
as Securities Intermediary

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILMINGTON TRUST N.A., as Securities Intermediary,<br><br>Plaintiff,<br><br>vs.<br><br>SUN LIFE ASSURANCE COMPANY OF CANADA,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT FOR BREACH OF INSURANCE CONTRACT**<br><br>**(DEMAND FOR JURY TRIAL)** |

Plaintiff Wilmington Trust N.A., as Securities Intermediary (the "Securities Intermediary"), hereby files this Complaint against Defendant Sun Life Assurance Company of Canada ("Sun Life") and alleges, on personal knowledge as to itself and on information and belief with regard to all other allegations, as follows:

1

**COMPLAINT FOR BREACH OF INSURANCE CONTRACT**

**NATURE OF THE ACTION**

1. This case is the latest instance of Sun Life's habitual refusal to pay death benefits on life insurance policies for which it has collected millions of dollars in premiums. Over the last several years, Sun Life has collected millions of dollars in premiums on insurance policies where Sun Life has no intention of paying the death benefit when the insured dies. In fact, it has become clear that Sun Life has every intention of challenging the validity of the policy only *after* the death of the insured. Indeed, rather than honor its contractual obligations and pay the death claims on the very same policies that Sun Life has relied on to line its pockets for many years, Sun Life instead files lawsuits in state and federal courts around the country asking those courts to refuse to enforce its policies while simultaneously seeking to keep millions of dollars in premium payments.

2. In the instant case giving rise to this Complaint, almost 16 years ago, Sun Life issued a $10 million life insurance policy (the "Policy") on the life of Aptos, California resident Harry Jenkins (the "Insured" or "Mr. Jenkins"). The Insured held the Policy through a limited liability company, Harry Jenkins Family, LLC (the "LLC"), which is a common ownership arrangement for valuable life insurance policies. At the time the Policy was issued, the Insured was the sole member of the LLC.

3. The Policy includes a standard two-year incontestability provision, which provides: "[a]fter this Policy has been in force during the lifetime of the Insured for a period of two years from its Issue Date, we cannot contest it except for non-payment of Premiums."

4. The Policy's Issue Date was April 28, 2004, which means the Policy became incontestable no later than April 28, 2006.

5. The ownership of the Policy was eventually transferred to the U.S. Bank, N.A. ("U.S. Bank") on June 1, 2006 – more than two years after the Policy's inception and over one month after the Policy became incontestable. Ownership of the Policy was subsequently transferred from U.S. Bank to the Securities Intermediary in May 2016.

6. The Insured died on October 8, 2019. All of the conditions precedent to payment of the death benefit (including, importantly, the payment of all premiums on the Policy) have been satisfied. As a result of these conditions precedent to payment of the death benefit being satisfied,

Sun Life has no right to refuse to pay the $10 million death benefit on the Policy now that the Insured has died or to challenge the validity of the Policy on any basis.

7. The Securities Intermediary has complied with all terms and conditions of the Policy, and has made significant premium payments from the time it acquired the Policy through the Insured's death.

8. Consistent with the Policy's terms, the Securities Intermediary submitted a death benefit claim to Sun Life on November 13, 2019 and notified Sun Life of its obligation to pay the death benefit.

9. Sun Life has refused to honor its contractual obligation under the Policy and has failed to pay the $10 million death benefit on the Policy.

10. Accordingly, the Securities Intermediary seeks a judgment adjudicating Sun Life in breach of the Policy or, alternatively, adjudicating Sun Life liable for the full $10 million death benefit plus interest under the doctrine of promissory estoppel.

## THE PARTIES

11. The Securities Intermediary is a national banking association organized and existing under federal law with its main office located in Wilmington, Delaware, as identified in its Articles of Association. The Securities Intermediary maintains its principal place of business in Wilmington, Delaware. Accordingly, for diversity of citizenship purposes, Securities Intermediary is a citizen of the State of Delaware.

12. Sun Life is a life insurance company organized and existing under the laws of Canada, with its principal place of business in the United States at One Sun Life Executive Park, Wellesley Hills, Massachusetts. Accordingly, for diversity of citizenship purposes, Sun Life is a citizen of Canada and a citizen of the Commonwealth of Massachusetts.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. 1332(a)(1), as the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between the Securities Intermediary and Sun Life.

**COMPLAINT FOR BREACH OF INSURANCE CONTRACT**

14. This Court has personal jurisdiction over Sun Life as a result of actions that Sun Life directed at this jurisdiction that are at issue in this litigation. Sun Life routinely issues insurance coverage in California to California policy insureds, owners, and beneficiaries, and specifically issued the Policy on the life of the Insured that is the subject matter of this litigation to an Insured who lived in California. At the time the application for the Policy was prepared and submitted to Sun Life, the Insured was a resident of Aptos, California and he was the sole member of the LLC both at the time the application was prepared and submitted and at the time the Policy was issued. Not only did the Insured live in California at the time the application was prepared and submitted for issuance of the Policy (and at all other relevant times), the Insured also owned and operated a business in Capitola, California at all relevant times and remained a resident of California at the time of his death, at which time the death benefit on the Policy became due and payable to the owner of that Policy. In addition, the application for the Policy was prepared in California and submitted from California and all other relevant documents necessary to obtain the Policy were prepared by the Insured and submitted to Sun Life from California. Furthermore, during the process that resulted in issuance of the Policy, Sun Life contacted the Insured's physician in California and obtained additional information from California. Finally, at the time it issued the Policy, Sun Life knew it was issuing a Policy insuring the life of a California resident.

15. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because the Insured was a resident of this District and because a substantial part of the events giving rise to the claims occurred in this District.

**FACTUAL BACKGROUND**

16. Almost 16 years ago, a Sun Life registered representative based in California solicited Mr. Jenkins – a 76-year-old Aptos, California resident – to purchase a $10 million life insurance policy from Sun Life. That solicitation occurred in California. Discussions about the Policy took place in California, the application for insurance and ancillary documents were prepared in California and necessary documents to apply for the Policy were submitted to Sun Life from California.

17. The Policy's Issue Date was April 28, 2004 and the Policy Date was May 27, 2004.

18. The Policy provided that it would become incontestable after two years from the Issue Date, which means the Policy has been incontestable for nearly fourteen years.

19. The application for the Policy and the Policy itself provide that the Insured owned the Policy through the LLC – a common ownership structure for individuals like the Insured who buy valuable insurance policies. In addition to being the owner of the Policy, the LLC was also its beneficiary.

20. The Policy's Initial Premium and its Planned Periodic Premium amount were $552,800. The LLC was responsible for paying the premiums.

21. The Policy was supported by a valid insurable interest under applicable law.

22. On June 1, 2006, more than two years after the Policy's Issue Date and approximately one month after the Policy became incontestable, the LLC transferred ownership of the Policy to U.S. Bank. The LLC did so in accordance with the Policy's express terms, which provided that "[d]uring the lifetime of the Insured, you may assign all or some of your rights under this Policy." On June 1, 2006, the LLC submitted an Ownership Change Request and a Beneficiary Change Request to Sun Life, which sought to transfer ownership of the Policy to U.S. Bank and sought to name U.S. Bank as the beneficiary of the Policy. The Ownership Change Request and Beneficiary Change Request forms both provided that "[t]he requested changes will not become effective until the form has been received and approved by Sun Life Financial's U.S. Operations."

23. On June 9, 2006, Sun Life confirmed in writing that "[o]wnership of the policy … was transferred to [U.S. Bank] as Securities Intermediary in accordance with the Ownership Change Request" and "[w]e also changed the beneficiary in accordance with your request."

24. On May 3, 2016, more than twelve years after the Policy's Issue Date and more than ten years since the Policy had become incontestable, U.S. Bank submitted an Ownership Change Request and a Beneficiary Change Request to Sun Life in accordance with the Policy's express terms, which sought to transfer ownership of the Policy to the Securities Intermediary and to name Securities Intermediary as the beneficiary of the Policy.

25. On May 27, 2016, Sun Life confirmed in writing that it had "transferred ownership of this policy to Wilmington Trust National Association, as Securities Intermediary, as requested. We

have also updated to the policy's beneficiary. The primary beneficiary is now Wilmington Trust National Association, as Securities Intermediary."

26. Securities Intermediary holds the Policy – as well as many other life insurance policies – on behalf of third-party investors. The Uniform Commercial Code defines a securities intermediary as "(i) a clearing corporation; or (ii) a person, including a bank or broker, that in the ordinary course of its business maintains securities accounts for others and is acting in that capacity." U.C.C. 8-102(a)(14). Securities intermediaries frequently own life insurance policies for the benefit of third-party investors.

27. The current third party investor beneficial owners acquired the Policy as part of a portfolio of policies – they did not acquire the Policy in isolation. In their due diligence of the policy portfolio which contained the Policy, the current beneficial owners of the Policy reviewed the chain of title on the Policy, which included Sun Life's approvals in writing of the ownership and beneficiary change on June 9, 2006 and May 27, 2016. The current beneficial owners also reviewed myriad representations by Sun Life over the life of the Policy that the Policy was valid and in force before agreeing to acquire the Policy (as part of a portfolio of policies) approximately twelve years after the Policy's origination and approximately ten years after the Policy became incontestable.

28. Securities Intermediary and the Policy's current beneficial owners were not involved in the original procurement of the Policy, so they relied on the fact that Sun Life's approval of the ownership and beneficiary changes – along with its myriad representations over the life of the Policy as to its validity through annual reports and other Policy-related correspondence – meant that Sun Life would not challenge the Policy when the Insured died and, instead, would pay the $10 million death benefit.

29. The Insured died in California on October 8, 2019, and Securities Intermediary notified Sun Life of the Insured's death promptly. On November 13, 2019, Securities Intermediary submitted a death claim to Sun Life and provided Sun Life with all of the documentation necessary to substantiate the death claim. Sun Life has not paid the $10 million death benefit that was owed to Securities Intermediary under the Policy.

**COMPLAINT FOR BREACH OF INSURANCE CONTRACT**

30. Sun Life has no intention of paying the $10 million death benefit, however, consistent with its well-established practice of challenging the validity of life insurance policies rather than paying claims on those policies. *See, e.g.*, *Sun Life Assurance Co. of Canada v. U.S. Bank Nat'l Ass'n*, C.A. No. 17-75-LPS (D. Del. Dec. 30, 2019); *Sun Life Assurance Co. of Canada v. U.S. Bank Nat'l Ass'n*, C.A. No. 17-75-LPS, 2019 WL 2151695 (D. Del. May 17, 2019); *Sun Life Assurance Co. of Canada v. Wilmington Trust, Nat'l Ass'n*, C.A. No. N17C-08-331 MMJ CCLD, 2018 WL 3805740 (Del. Super. Aug. 9, 2018); *Sun Life Assurance Co. of Canada v. Wilmington Trust Co.*, Case No. 2:15-cv-00758, 2017 WL 978997 (D. Utah Mar. 13, 2017); *Sun Life Assurance Co. of Canada v. U.S. Bank Nat'l Ass'n*, 839 F.3d 654 (7th Cir. 2016).

## COUNT I

## BREACH OF CONTRACT

31. Securities Intermediary incorporates by reference paragraphs 1 through 30 as if set forth herein at length.

32. The Policy constitutes a valid, enforceable written contract that requires Sun Life to pay a $10,000,000 death benefit to Securities Intermediary.

33. Securities Intermediary, as the sole registered owner and beneficiary of the Policy, is entitled to timely receive the benefits due under the Policy.

34. Securities Intermediary has complied with all applicable conditions of the Policy and all premiums due under the Policy have been paid.

35. The Insured died on October 8, 2019 and Sun Life was provided with proof of the Insured's death shortly thereafter. Sun Life was obligated under the Policy to promptly pay the $10,000,000 death benefit due under the Policy to Securities Intermediary, plus interest, as the Policy requires. Sun Life has not paid the $10,000,000 death benefit, plus interest, as the Policy requires, and therefore Sun Life has breached the Policy.

36. As a result of Sun Life's breach of the Policy, Securities Intermediary has been damaged in an amount of $10,000,000, plus interest.

# COUNT II

## PROMISSORY ESTOPPEL

### (IN THE ALTERNATIVE TO COUNT I)

37. Securities Intermediary incorporates by reference paragraphs 1 through 36 as if set forth fully herein at length.

38. Sun Life issued the Policy in exchange for the Policy's owners' agreement to pay millions of dollars in premiums, and Sun Life did in fact receive millions of dollars in premiums during the life of the Policy.

39. In exchange for those premiums, Sun Life promised to pay, and represented that it would pay, the Policy's owner the $10 million death benefit promptly following the Insured's death. The Policy's owners agreed to pay millions of dollars in premiums in exchange for the right to receive that death benefit.

40. Sun Life's promise to pay, and representation that it would pay, the $10 million death benefit in exchange for significant premium payments was a material fact that is contrary to Sun Life's later-asserted position – namely, its refusal to pay the $10 million death benefit.

41. Sun Life reasonably expected to induce the Policy's owners to pay millions of dollars in premiums in return for Sun Life's promise to insure the Insured's life and Sun Life's commitment to pay the $10 million death benefit promptly after the Insured's death. Sun Life in fact induced such action because the Policy's owners continued to pay significant premiums to Sun Life – totaling millions of dollars during the life of the Policy – in order to prevent the Policy from lapsing and to ensure that Securities Intermediary would ultimately receive the $10 million death benefit.

42. The Policy's owners – including Securities Intermediary and the third-party investors that beneficially own the Policy – reasonably and foreseeably relied on Sun Life's promise to pay, and Sun Life's representation that it would pay, the $10 million death benefit when the Insured died. The Policy's owners reasonably and foreseeably relied on Sun Life's approval of ownership and beneficiary changes on the Policy, as well as Sun Life's multiple representations that the Policy was valid and in good standing. The third-party investors who acquired a beneficial interest in the Policy, which is held by the Securities Intermediary for them, innocently acquired the Policy nearly

ten years after it had become incontestable, and believed in good faith that the Policy was valid and that Sun Life would comply with its promise to pay, and its repeated representations that it would make good on its promise to pay, the $10 million death benefit when the Insured died.

43. By approving ownership and beneficiary changes, accepting millions of dollars in premiums over an almost sixteen-year period, making repeated representations to Securities Intermediary and the Policy's other, previous owners that the Policy was valid, and sending annual reports and other correspondence making clear that the Policy was in force, Sun Life made clear and unambiguous promises and representations that the Policy was valid, in force, and would be honored by Sun Life when the Insured died.

44. Securities Intermediary and the third-party investors who acquired a beneficial interest in the Policy reasonably relied upon Sun Life's promises and representations in acquiring the Policy, continuing to make timely premium payments on the Policy, and keeping and maintaining the Policy for almost four years.  This reasonable reliance on Sun Life's representations and promises was to the detriment of Securities Intermediary and the third-party investors– and caused a change in position to the detriment of Securities Intermediary and the third-party investors – because they acquired the Policy and made timely premium payments on the Policy based on Sun Life's representations and promises that Sun Life would pay the Policy's death benefit in exchange for the premium payments and that the Policy was valid.

45. The only way to avoid injustice would be for the Court to require Sun Life to fulfill its promises and make good on its representations that the Policy is valid, enforceable, and incontestable, and pay Securities Intermediary the $10 million face amount on the Policy plus interest.

**PRAYER FOR RELIEF**

WHEREFORE, Securities Intermediary prays that the Court enter judgment as follows:

(A) Awarding Securities Intermediary damages for breach of contract (or, in the alternative, promissory estoppel) in an amount not less than $10,000,000 (representing the death benefit under the Policy);

(B) Awarding Securities Intermediary its costs of suit, expenses and reasonable attorney's fees;

(C) Awarding Securities Intermediary pre-judgment and post-judgment interest at the maximum rate permitted under the law; and

(D) Granting Securities Intermediary such other, further, and different relief as the Court deems just and appropriate.

K&L GATES LLP

Dated: January 29, 2020          By:  /s/ Edward P. Sangster
                                      Edward P Sangster
                                      edward.sangster@klgates.com

                                      Attorneys for Plaintiff Wilmington Trust N.A..,
                                      as Securities Intermediary

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

K&L GATES LLP

Dated: January 29, 2020          By:  /s/ Edward P. Sangster
                                      Edward P Sangster
                                      edward.sangster@klgates.com

                                      Attorneys for Plaintiff Wilmington Trust N.A..,
                                      as Securities Intermediary

**COMPLAINT FOR BREACH OF INSURANCE CONTRACT**